IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COURTNEY C., ) | |
| ) | No. 20 C 4016 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Courtney C. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

On December 16, 2017, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 14-26, 1108, 1126.) The Appeals Council declined review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date. (R. 16.) At step two, the ALJ determined that plaintiff has the severe impairments of "dystonia,[1] degenerative joint disease, degenerative disc disease, Crohn's disease, depression, and anxiety disorder." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equal the severity of one of the listed impairments. (R. 17.) At step four, the ALJ found that plaintiff is

---

[1] "Dystonia is a movement disorder in which your muscles contract involuntarily, causing repetitive or twisting movements." https://www.mayoclinic.org/diseases-conditions/dystonia/symptoms-causes/syc-20350480 (last visited Aug. 16, 2022).

2

unable to perform any past relevant work but has the RFC to perform sedentary work with certain exceptions, and thus she is not disabled. (R. 19-26.)

Plaintiff argues that the RFC, which limits her to "carry[ing] out simple instructions, and mak[ing] simple work-related decisions," does not adequately account for her moderate limitation in concentrating, persisting, and maintaining pace. (ECF 18 at 7 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (stating "[i]n most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.")); *see* R. 18-19.) More recently, however, the Seventh Circuit has said:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, "fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

*Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Because the RFC comports with *Pavlicek*, the fact that the ALJ found plaintiff moderately limited in concentration, persistence, and pace is not a basis for remanding this case.

Alternatively, plaintiff argues that there is no support for the ALJ's conclusion that plaintiff could be on task at least eighty-five percent of a workday, *i.e.*, work full time. (*See* R. 1090 (vocational expert testifying that employer tolerance for off-task time is not more than fifteen percent).) The ALJ's conclusion was based on: (1) agency psychologist Fyans' opinion that, despite plaintiff's mental impairments, she retained "the cognitive and attentional skills for simple one and two step task[s]" and "can sustain [such work] across a work day and a work week;" (2) "treatment records, which have continually documented unremarkable mental status examinations with stable mood, stable thought processes, clam [sic] behavior, and no suicidal/violent behavior;"

3

and (3) plaintiff's reported hobbies of "'sewing, reading, and crafts,' which require the ability to concentrate." (R. 18, 23 (citing R. 1122, 1253, 1602, 1604, 1606, 1608, 1610, 1685-87).) The ALJ, however, focused solely on evidence that favors her view and failed to address the wealth of contrary evidence that suggests plaintiff's mental impairments are intractable and adversely impact her ability to stay on task. (*See, e.g.*, R. 1265-66 (3/3/18 function report completed by plaintiff's mother that says plaintiff reads, watches TV, and does sewing projects, but "[s]he doesn't take interest in these things long—she cannot concentrate as well and does not finish them," her memory and concentration are affected by the medications she takes, and she "struggles to concentrate" on instructions); R. 1509 (Dr. Danehy's notes dated 1/9/17 assessing plaintiff with "[s]evere, recurrent, major depression"); R. 1530 (Dr. Kompoliti's notes dated 7/14/17 stating that plaintiff's depression was moderate and worsening); R. 1533 (Dr. Danehy's notes dated 9/5/17 stating that plaintiff's depression was "now moderate-severe," she had "tremendous helplessness," and had made minimal improvement); R. 1538 (Dr. Danehy's notes dated 10/30/17 stating that plaintiff has "depression without resolution" that is "highly related to . . . chronic pain"); R. 1548 (Dr. Danehy's notes dated 1/29/18 stating that plaintiff's mental condition was minimally improved); R. 1937 (Dr. Kompoliti's notes dated 10/29/18 stating that plaintiff's depression is "moderate and worsening"); R. 1942 (Dr. Danehy's notes dated 10/16/18 stating that plaintiff had "[s]evere depression," was agitated, had fair to poor insight and judgement, and was in "[c]risis"); R. 1948 (Dr. Danehy's notes dated 9/4/18 stating that plaintiff's mental condition was declining); R. 1734 (Dr. Belford's notes dated 10/24/18 stating that plaintiff's energy level is low and she has trouble concentrating); R. 1776 (therapy notes dated 10/29/18 stating that plaintiff was "somewhat distracted" during group therapy); R. 1792 (notes dated 11/2/18 stating that plaintiff's focus was "[i]nconsistent" and her statements were "tangential" during group therapy); R. 1803-05 (notes

4

dated 11/5/18 stating that plaintiff had "[i]nconsistent" focus during Monday morning/weekend check in, and during group therapy, "sometimes appeared distracted," and said she "starts projects with no intentions of completing them"); R. 1816 (therapy notes dated 11/6/18 stating that plaintiff arrived an hour late); R. 1823-24 (11/7/18 therapy notes stating that plaintiff "arrived quite late," "appeared to be in [a] story competition with a peer," and had "[i]nconsistent" and "[i]mpaired" focus); R. 1843 (therapy notes dated 11/12/18 stating that plaintiff had inconsistent focus and was distractible); R. 1851 (therapy notes dated 11/14/18 stating that plaintiff had inconsistent focus and impaired attention); R. 1867 (therapy notes dated 11/19/18 stating that plaintiff had inconsistent and impaired focus and "appeared to be looking around at times with a blamk [sic] look on her face"); R. 1882 (Dr. Belford's notes dated 11/26/18 stating that, on some days, plaintiff "appears as though she is internally distracted[,] staring off at things . . . no one else can see, very easily distracted"); R. 1920-21 (Dr. Danehy's notes dated 12/4/18 stating that plaintiff had "a lot of helplessness" and there was no improvement in her condition); R. 1915 (Dr. Danehy's notes dated 1/14/19 stating that plaintiff is "more secluded, less functional" and had had no improvement in her condition); R. 1957-59 (Dr. Danehy's notes dated 7/24/18 stating that plaintiff had "[t]rouble focusing," "[d]oesn't complete anything," "[d]oesn't seem to keep interest in anything," "[c]an't even concentrate on a TV show or on phone," and her condition was declining); R. 1948 (Dr. Danehy's notes dated 9/4/18 stating that plaintiff's condition was declining); R. 1991 (therapy notes dated 4/10/19 stating that plaintiff "continues to report symptoms such as low motivation and energy, hopelessness, low self worth, difficulty with concentration and sleep"); R. 2018 (therapy notes dated 2/8/19 stating that plaintiff "can't sit still" and "can't turn [her] mind off"); R. 2024 (therapy notes dated 1/18/19 stating that plaintiff said she was "trying to find something to do that [she] like[d] doing, something to finish"); R. 2429 (Dr. Danehy's notes dated 2/22/19

5

stating that plaintiff was depressed and anxious, felt hopeless and helpless, had poor insight and judgment, and had experienced no further improvement in her condition); R. 2432-35 (Dr. Kompoliti's RFC questionnaire dated 6/4/19 stating that plaintiff's depression and anxiety contribute to her functional limitations and that the stress from her conditions would "frequently" affect the attention and concentration needed to perform simple work tasks).)[2] "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Because that is precisely what the ALJ did here, her decision is not supported by substantial evidence.

## Conclusion

For the reasons set forth above, the Court reverses the Commissioner's decision, denies the Commissioner's motion for summary judgment [23], and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**             **ENTERED:  August 16, 2022**

**M. David Weisman**
**United States Magistrate Judge**

---

[2] The ALJ addressed Dr. Kompoliti's RFC questionnaire in the opinion but only as it pertained to plaintiff's dystonia. (*See* R. 24.)